IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12cv144-WC |
| | ) | |
| CHARLES R. TROTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment (Doc. 16) and Supplement to the Motion for Summary Judgment (Doc. 30). Upon consideration of the Motion (Docs. 16 & 30), the briefs filed in opposition to and in support of the Motion, and the record as a whole, the court finds that the Motion for Summary Judgment (Docs. 16 & 30) is due to be GRANTED in PART and DENIED in PART.

## I.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]   Only disputes about material facts will preclude the

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and

granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

applying" the standard now articulated in Rule 56(a). Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## II.    STATEMENT OF FACTS

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Plaintiff's Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

In approximately 1995 or 1996, Plaintiff extended an unsecured line of credit in the original amount of $50,000. Over the years, through several changes in ownership of the bank and different loan officers, the line of credit was increased to $500,000.

On March 18, 2009, Plaintiff renewed Defendant's line of credit through a commercial loan in the principal amount of $497,908.81 as evidenced by the promissory note dated March 18, 2009.  Defendant signed but did not read the Promissory Note. Under the terms of the Note, Defendant agreed to make "consecutive monthly payments of principal equal to $8,298.48, plus accrued interest, commencing on October 11, 2009, and continuing on the same day of each month thereafter."  Promissory Note, Pl.'s Ex. A (Doc. 1-1) at 2.  The Note further states that all principal and accrued interest shall be due and payable on September 11, 2014."  *Id.*

Defendant defaulted under the terms of the Note.  Plaintiff notified Defendant of the default under the Note and demanded payment in full by a letter dated June 29, 2010. Under the terms of the Note, Plaintiff's remedies include acceleration upon default whereby the bank may "[a]ccelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under the swap agreements . . . ; whereupon this Note and the accelerated Obligation shall be immediately due and payable."  Promissory Note, Pl.'s Ex. A (Doc. 1-1) at 3.  Plaintiff filed the instant suit, raising breach of contract and unjust enrichment claims and seeking to recover under the Note.

## III.   DISCUSSION[2]

### A.   Breach of Contract Claim

Plaintiff alleges that "Defendant is in breach of the Note for, among other things, failure to make payments when due and/or the failure to pay upon maturity."  Compl. (Doc. 1) at 3.

Under Alabama law, "[p]roduction of a properly executed note, valid and unsatisfied on its face, makes a prima facie case of default."  *Avnet, Inc. v. Validata Computer & Research Corp.*, 2010 WL 2025367, at *3 (M.D. Ala. May 20, 2010) (citations omitted).  *See also Griffin v. American Bank*, 628 So. 2d 540, 543 (Ala. 1993) (finding that the bank was entitled to summary judgment on promissory note where bank's president submitted affidavit attaching copy of the note and stating that borrower made no payments on note, and borrower did not offer evidence in defense); *Chilton Warehouse & Mfg. Co. v. Lewis*, 57 So. 100, 101 (Ala. App. 1911) (stating that upon introduction of note into evidence, the burden shifts to defendant to show that the holder is not entitled to recover thereon).  "Once the prima facie case is established, the party liable on the note must establish a defense."  *Avnet, Inc.*, 2010 WL 2025367, at *3.

In addition to producing a copy of the promissory note, Plaintiff has provided evidence, in the form of an affidavit from Dana Howard, a loan officer for Wells Fargo

---

[2] The court applies Alabama law to the legal issues presented on summary judgment in this case because the Note provides that it will be governed by Alabama law, and because "a federal court sitting in diversity will apply the choice of law rules for the state in which it sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005).  Moreover, Alabama courts hold that contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement. *Cherry, Bekaert & Holland v. Brown,* 582 So. 2d 502, 506 (Ala. 1991).  Here, it is undisputed that Alabama law applies.

Bank, which sets forth that Defendant executed the Note in favor of Plaintiff, Plaintiff is the current holder of the Note, Defendant has failed to make required payments on the loan, and the amounts due under the Note.  *See* Howard Aff., Pl.'s Ex. 1 (Doc. 16-1).  In response, Defendant does not dispute that he signed and executed the Note, that Plaintiff is the holder of the Note, or that the Note is in default.   Resp. (Doc. 18) at 2. Accordingly, the court finds that Plaintiff has established a *prima facie* case as to Defendant's breach of the Note.

In opposing Plaintiff's Motion for Summary Judgment, Defendant asserts two defenses, arguing that:   Plaintiff fraudulently induced him into signing the Note and Plaintiff failed to exercise reasonable care to mitigate damages.  Resp. (Doc. 18) at 2 & 4. The court addresses each defense below.

### 1.      Fraudulent Inducement Defense

Under Alabama law, "Fraud in the inducement consists of one party's misrepresenting a material fact *concerning the subject matter of the underlying transaction* and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action."   *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 461 (Ala. 2000) (emphasis in original).  "[T]o prevail on a fraudulent inducement claim, [Defendant] must prove:   (1) [Plaintiff] had a duty to speak the truth; (2) [Plaintiff] made a false representation of material fact; (3) [Plaintiff] justifiably relied[3] upon the false representation; and (4) as a proximate result,

---

[3] Alabama courts have replaced the "justifiable reliance" standard with a "reasonable reliance" standard when determining a fraudulent inducement claim.  The Alabama Supreme Court, in

[Defendant] suffered loss, harm, or damage." *McGriff v. Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir. 1997) (citing *Kidder v. AmSouth Bank, N.A.*, 639 So. 2d 1361, 1362 (Ala. 1994) and *Alfa Mut. Ins. Co. v. Northington*, 561 So. 2d 1041, 1045 (Ala. 1990)).  "[T]he burden is on the party alleging fraud to prove by substantial evidence the element of reliance." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004) (citing *Allstate Ins. Co. v. Eskridge*, 823 So. 2d 1254, 1264 (Ala. 2001)).

Defendant asserts that he was fraudulently induced into signing the Note because Jake Defee, a bank representative, misrepresented to him that the Note was "simply a renewal of the old obligation, . . . the representations that the documents were 'simply a renewal of the old obligation' was material and Defendant reasonably relied on the representation of the Bank based on their long-standing relationship, and course of dealing." Resp. (Doc. 18) at 5.

Plaintiff argues that "Defendant's fraudulent inducement defense fails because (A) it cannot possibly void the 2008 Note, which Defendant admits Plaintiff had every right

---

*Foremost Ins. Co. v. Parham,* 693 So. 2d 409 (Ala. 1997), overruled the "justifiable reliance" standard adopted in *Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989), and returned to the "reasonable reliance" standard which previously governed.  *Foremost*, 693 So. 2d at 421.  The Alabama Supreme Court rejected the "justifiable reliance" standard because it "eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial)." *Id.*  The "reasonable reliance" standard was held not only to provide "a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties" but to also provide "a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id.*

to demand, (B) there was no misrepresentation; (C) Defendant did not gain anything as a result of the alleged misrepresentation; and (D) as a matter of well-established Alabama law, Defendant could not have reasonably relied on the alleged misrepresentation." Supp. to Mot. (Doc. 30) at 6-7.  Upon review of the record, the court finds Defendant cannot make out a fraudulent inducement defense because he cannot establish he reasonably relied on the alleged misrepresentation.

### a.    *Reasonable reliance on Defee's statements.*

The court does not find that Defendant actually established there was a misrepresentation of a material fact and that he relied on it.  Even assuming that the Bank did misrepresent a material fact and that Defendant relied on this misrepresentation to his detriment, Defendant has not established that he *reasonably* relied on this oral misrepresentation as is required in order to survive a motion for summary judgment on a fraudulent inducement defense.  Defendant asserts that "[b]ecause [he] had no reason to believe after fifteen (15) years of the Note being renewed on the same terms, that the Bank would unilaterally change the terms, he was justified in relying on the Bank's express representation that the document was a renewal of the 2008 Note with the same terms.[4]  . . .  The material issue of whether Trotman reasonably relied on the representation by the Bank requires a factual determination predicated on the history, and

---

[4] The court notes that Defendant's contention that Defee's representation that the Note was a renewal of the old obligation is not contradicted by Defendant's assertion that he believed he signed a renewal of the 2008 Note.  A change in the terms of the Note does not constitute a change in the renewal of the old obligation.

course of practice between the part[i]es.  Therefore, the Bank is not entitled to summary judgment."  Supp. Resp. (Doc. 32) at 7.

"In order to determine whether [Defendant's] reliance on [Defee's] statement was reasonable or not, this Court must focus on what an ordinarily prudent person would have done under the circumstances of the transaction."  *Eley v. Travelers Ins. Cos., Inc.*, 2011 WL 671681, at *12 (M.D. Ala. Feb. 18, 2011).  It is undisputed that Defendant signed but did not read the Note.[5]  Defendant contends that Defee told him they were "extending the line of credit just like [they]'d always done."  Trotman Depo. at 18-19, Def.'s Ex. A

---

[5] At his deposition, Defendant testified as follows:

> A.  I didn't read the note at the time I signed it based on the fact that the bank's representative, Jake Defee, when he came in to tell me – he called me initially and said, Charlie, it's time to renew the line of credit.  And I said, sure come on by.  So he brought it by.
>
> We went back into my office, and we chitchatted a bit.  He left the document with my secretary open to the page I was supposed to sign it.  And as I walked back out, I signed it and gave it back to him, the same as I'd done before for – as I said, for probably 15 other years.
>
> And it was totally under the stated, you know, purpose that Jake made to me, which was that we're extending the line of credit just like we'd always done.  I had no idea that in this document that the bank was amortizing the line of credit.  Because, again, the line of credit had been established years and years and years ago, and that had never taken place before.  And, as he stated, was not taking place this time to my knowledge.
> . . .
>
> A.  I don't – well, basically, you know, the note is signed.  And so from outside, you know, looking in, it looks like it would be enforceable.  But the reason that I am saying that it's not enforceable is because of the situation that we were in as it was signed and what was taking place when it was signed.
>
> It's a document in and of itself that's signed, but it was signed under a different assumption and under a different stated purpose.
> Q.  All right.
> A.  It was represented to me by the bank that it was an extension of the line of credit just like it always was.  It was never explained to me that it was changing the terms of our note.

Trotman Depo. at 18-19 & 20, Def.'s Ex. A (Doc. 32-1) at 5.

(Doc. 32-1) at 5.  Thus, a reasonably prudent person, signing a written contract renewing the Note, would have reviewed the monthly payment terms.  *See, e.g.*, *Eley*, 2011 WL 671681, at *12 (holding that "a reasonably prudent person, having filled out and signed a written cancellation request on the disputed policy, should have ensured that the policy was, in fact, still in place.") (emphasis omitted).

Alabama law is clear that Defendant cannot blindly rely on oral assertions or representations and fail to review the written terms of a contract associated with a transaction.  *See, e.g.*, *Eley*, 2011 WL 671681, at *12 ("The mere fact that a plaintiff is told one thing is not enough to make reliance upon it reasonable; rather, a plaintiff has a duty to read associated written documents and to investigate facts that should provoke inquiry").  *See also AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008) ("[A] plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents."); *Wright Therapy v. Blue Cross*, 991 So. 2d 701, 706 (Ala. 2008) ("Under the ['reasonable-reliance'] standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract.") (*quoting* Harold Allen's *Mobile Home Factory Outlet, Inc. v. Early,* 776 So. 2d 777, 783-84 (Ala. 2000)).

Moreover, Defendant's characteristics do not support a finding that he *reasonably* relied on any alleged misrepresentation.  It is clear Defendant is capable of both reading

and understanding the promissory note,[6] but was not diligent in ensuring the document he signed was what he thought it to be.  *See, e.g.*, *Oakwood Mobile Homes, Inc.*, 773 So. 2d at 461 (rejecting defendant's contention that he relied on agent's statement that the document he was signing was merely "for insurance purposes" because "[a]ny falsity . . . is apparent on the face of the document itself [and defendant] did not state in his affidavit that he cannot read or [the agent] prevented him from reading the documents he signed.").

The court also notes that while illiteracy and ambiguous written contracts have been recognized by Alabama courts as exceptions to the *Foremost* rule, these exceptions are not applicable to this case.[7]  While Defendant asserts that had he known the monthly payments of the Note had increased from $1,500 to $8,298.48, he would not have signed it, the fact that the written Note contradicted the oral representations made by Defee is clear from a simple reading of the Note as the monthly payment amount is clearly listed on the second page of the Note. There is also no evidence of a special or fiduciary

---

[6] In fact, Defendant is a businessman with over fifteen years of business experience and holds a Juris Doctor degree.

[7] In *Potter v. First Real Estate Co., Inc.*, 844 So. 2d 540, 551 (Ala. 2002), the Alabama Supreme court recognized an exception to the general rule that a plaintiff's reliance on the representations of a defendant is unreasonable when the plaintiff was in possession of documents the plaintiff could have read that were inconsistent with the statements on which the plaintiff alleges he relied.  The *Potter* Court held that an individual is not capable of discovering fraud or misrepresentation by reading and understand the terms of a contract if he or she is illiterate. *See Potter*, 844 So. 2d at 547.  In addition, the court held that discovery of the fraud should not be deemed, as a matter of law, to have occurred upon the plaintiff's receipt of documents, if such document is ambiguous, i.e., capable of more than one interpretation, and thus hard to understand.  *See id*. (discussing *Ex parte Seabol*, 782 So. 2d 212, 216-17 (Ala. 2000) (distinguishing *Foremost* and finding that where underlying documents are not easily understood, a party's reliance on oral representations concerning documents is reasonable)).

relationship between Defendant and Plaintiff that could support a finding that Defendant reasonably relied on Defee's oral representations. *See, e.g.*, *Shewmake v. Anderson,* 2012 WL 5378942, at*5 (N.D. Ala. Oct. 30, 2012) ("Under Alabama law, the relationship of a lender to a borrower generally does not impose a fiduciary duty on the lender. This general rule also applies to the relationship between a mortgagee and mortgagor") (citing *K & C Dev. Corp. v. AmSouth Bank, N.A.,* 597 So. 2d 671, 675 (Ala.1992) ("Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank.")). *See also Potter v. First Real Estate Co., Inc.*, 844 So. 2d 540, 551 (Ala. 2002) (reversing summary judgment in favor of the real-estate agent and her company and finding that there was evidence of a special relationship between the plaintiffs and their acknowledged real-estate agent, together with evidence indicating that the agent had employed an artifice at the closing that lulled the plaintiffs into a false sense of security as to the contents of a document the plaintiffs were unable to read.).

For the reasons stated above, the court finds Defendant has not carried his burden.[8] Defendant has not demonstrated that, as a matter of law, he reasonably relied on the

---

[8] "An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in [the] complaint are true." *Sterten v. Option One Mortg. Corp.,* 479 F. Supp. 2d 479, 482 (E.D. Pa. 2007) (alteration added). Accordingly, "on a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable," *Office of Thrift Supervision v. Paul,* 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (citing *Blue Cross and Blue Shield v. Weitz,* 913 F.2d 1544, 1552 (11th Cir. 1990)), and it is "[o]nly upon such a showing [that] the burden shift[s] to [a] plaintiff regarding that affirmative defense," *Paul,* 985 F. Supp. at 1470 (citing *Weitz,* 913 F.2d at 1552 n. 13). "The reason is that the defendant bears the burden of proof on his affirmative defenses at trial." *Paul,* 985 F. Supp. at 1470 (citing *Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1550–51 (11th Cir. 1990)).

representation made by Defee.  Accordingly, Defendant's fraudulent inducement defense cannot lie.

### 2.     Plaintiff's failure to mitigate damages.

Defendant's second defense is that Plaintiff failed to reasonably mitigate damages. "Alabama courts have recognized a duty to mitigate in the breach of contract context." *Whitney Bank v. Point Clear Development, LLC*, 2012 WL 2277597, at *3 (S.D. Ala. June 18, 2012) (citing *Neumiller Farms, Inc. v. Cornett*, 368 So. 2d 272 (Ala. 1979)). "But the concept of mitigation in the breach-of-contract context has certain rigid, well-defined boundaries." *Whitney Bank*, 2012 WL 2277597, at *3.

Here, Defendant argues that "the Bank intentionally created the deficiency by fraudulently inducing him to sign a new Note, with altered terms, which amortized the entire debt and required monthly payments far in excess of the Defendant's ability to repay.  Had the Bank not altered the terms of the prior Note, the Defendant would have continued to pay as he had for the prior fifteen (15) years, and Bank would not have incurred any additional costs (including attorney[']s fees)."  Resp. (Doc. 18) at 3-4. Defendant's argument is premised on his claim that the note was fraudulently induced and, thus, invalid.  Because, as discussed above, the court finds Defendant's fraudulent inducement defense is due to fail, it follows that Defendant's mitigation defense argument is also due to fail.

Defendant also asserts that "he offered bank $61,000 toward payment of loan" and the "Bank refused to accept the payment, thereby failing to mitigate its own damages and improperly increasing its claim against Trotman."  Supp. Resp. (Doc. 32) at 9.   However,

Defendant does not identify authority that imposes on a lender the obligation to accept such offer following a borrower's default.  Indeed, "'the law does not require a party to mitigate in a way that requires continued dealing with the breaching party.'"  *Whitney Bank*, 2012 WL 2277597, at *4 (quoting *Citizens Federal Bank v. United States,* 66 Fed. Cl. 179, 186 (Fed. Cl. 2005)).  Nor has Defendant presented decisional authority finding that the duty to mitigate operates to constrain the bank's contractual rights when a borrower breaches a promise to pay.  The terms of the Note itself provided that Plaintiff could "accelerate the maturity" of the Note.  *See* Promissory Note, Pl.'s Ex. A (Doc. 1-1) at 3.[9]  Thus, "Defendant[] cannot use the duty to mitigate as a *post hoc* vehicle for superimposing new advantageous terms on (and for eradicating disadvantageous terms from) their bargain."  *Whitney Bank*, 2012 WL 2277597, at *4.  "[T]he rule [of the duty to mitigate damages] does not require an aggrieved party to sacrifice a substantive right or forego an advantageous opportunity for the benefit of the breaching party."  *Neumiller Farms*, 368 So. 2d at 276.  Thus, Defendant's mitigation defense argument is due to fail and Plaintiff is entitled to summary judgment on its breach of contract claim.

### B.    Unjust Enrichment Claim

Plaintiff also moves for summary judgment as to its unjust enrichment claim, arguing that because "Defendant admits that he received the principal amount sued for, $413,710.33, from Plaintiff" and "[t]here is no contention by the Defendant that Plaintiff

---

[9] Under the terms of the Note, Plaintiff's remedies include acceleration upon default whereby the bank may "[a]ccelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under the swap agreements . . . ; whereupon this Note and the accelerated Obligation shall be immediately due and payable."  Promissory Note, Pl.'s Ex. A (Doc. 1-1) at 3.

should not have a reasonable expectation of repayment of the monies advanced before the 2009 Note was executed," then "Plaintiff is due to be granted judgment as a matter of law on its unjust enrichment/quantum meruit claim, as there is no issue of material fact as to the elements thereof."  Supp. to Mot. (Doc. 30) at 14.

Upon review of the record, the court finds Plaintiff's unjust enrichment claim is due to be dismissed.  "[N]o cause of action for unjust enrichment is cognizable where, as here, there is an express contract between the parties."[10]  *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013).  "[W]here a plaintiff has brought claims sounding in both express contract and quasi-contract as to the same subject matter, Alabama courts have deemed the quasi-contract claim not to be cognizable."  *White v. Microsoft Corp.,* 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006).  "Because an express contract covers the same subject matter and affords [Plaintiff] complete relief from any injustice arising from [Defendant's] retention of [the loan], it is unnecessary to indulge the legal fiction of implying such a contract to avoid an inequitable outcome."  *Id*. Accordingly, Plaintiff is not entitled to summary judgment on its unjust enrichment claim and the claim is due to be dismissed.

---

[10] *See, e.g.*, *Joiner v. USAA Cas. Ins. Co.,* 2013 WL 84935, at *1 n.1 (M.D. Ala. Jan. 8, 2013) ("[T]he unjust enrichment claim is due to be dismissed for failure to state a claim, as there is no dispute that an insurance contract existed and a claim based on an implied contract will not lie where there is an express contract"); *Gould v. Transamerica Life Ins. Co.,* 2012 WL 512667, at *3 (S.D. Ala. Feb. 15, 2012) ("[I]t is not possible to have a viable unjust enrichment claim when there is an express contract as to the same subject matter"); *Kennedy v. Polar–BEK & Baker Wildwood Partnership*, 682 So. 2d 443, 447 (Ala. 1996) ("This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."); *Patans Ventures, Inc. v. Williams,* 959 So. 2d 115, 117 n.1 (Ala. Civ. App. 2006) (citing learned treatise for proposition that "an action for unjust enrichment cannot lie in the face of an express contract").

**IV.    CONCLUSION**

For the reasons discussed above, it is ORDERED that Plaintiff's Motion for Summary Judgment (Docs. 16 & 30) is GRANTED in PART and DENIED in PART as follows:

1.   The Motion is GRANTED as to Plaintiff's Breach of Contract Claim; and

2.   The Motion is DENIED as to Plaintiff's Unjust Enrichment Claim.  It is further ORDERED that Plaintiff's Unjust Enrichment Claim is DISMISSED.

A separate judgment shall issue.

Done this 15th day of April, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE